**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES KAPLOW**, <br><br> Plaintiff, <br><br> v. <br><br> **PORT POLICE & GUARDS UNION LOCAL 1456**, *et al.*, <br><br> Defendants. | Civil Action No. 22-1708 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before this Court is a Motion for Remand (the "Motion") filed by Plaintiff James Kaplow ("Plaintiff") pursuant to 28 U.S.C. § 1447. (ECF No. 19.) Plaintiff filed a brief in support of the Motion ("Moving Br.", ECF No. 19-3), and a certification of counsel ("Edelstein Cert.", ECF No. 19-2). Defendants APM Terminals Elizabeth, LLC, Maersk A/S, and Maersk, Inc. (collectively, "Maersk Defendants") opposed the Motion. ("Maersk Opp'n Br.", ECF No. 25.) Defendant Port Police & Guards Union, Local 1456 ("Defendant PPGU") also opposed the Motion. ("PPGU Opp'n Br." ECF No. 26.) Maersk Defendants also filed a supplemental brief in opposition to the Motion. (ECF No. 27.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Plaintiff's Motion for Remand will be GRANTED.

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On January 31, 2022, Plaintiff filed a complaint ("Compl.") in the Superior Court of New Jersey, Mercer County, claiming damages under the Conscientious Employee Protection Act ("CEPA"), Law Against Discrimination ("LAD"), and common law assault and battery, against the following Defendants: APM Terminals Elizabeth, Maersk A/S, Maersk, Inc., Port Police & Guards Union, Local 1456, Anthony Carto, Vincent Brown, and John Does 1-5 and 6-10.  (*See* Compl., ECF No. 1-1 at PageID 21–42.)  On May 5, 2022, Defendant PPGU, with the consent of Maersk Defendants, filed a Notice of Removal ("NOR") with the United States District Court for the District of New Jersey.  (*See* ECF No. 1.)

Plaintiff's complaint sets forth the following facts.

Plaintiff is a resident of the State of New Jersey.  (Compl. ¶ 1.)  Defendants APM Terminals Elizabeth, Maersk A/S, Maersk, Inc., are entities conducting business in the State of New Jersey with a registered agent located in Mercer County.  (*Id*. ¶¶ 2–4.)  Defendant PPGU is a New Jersey non-profit corporation, and serves as the collective bargaining representative for Plaintiff and other employees of the Maersk Defendants.  (*Id*. ¶ 5.)

Defendants Anthony Carto ("Carto") and Vincent Brown ("Brown") are residents of the State of New Jersey.  (*Id*. ¶ 6.)

Plaintiff began working for the Maersk Defendants as a Guard in or around 2016.  (*Id*. ¶ 8.)  On July 6, 2021, Plaintiff attempted to enter the sign-out booth at work at the same time as Carto, another guard.  (*Id*. ¶ 11.)  Upon attempting to enter the booth, Carto shoved Plaintiff into another individual.  (*Id*. ¶ 14.)

Plaintiff thereafter reported the assault to his supervisor Joseph Costa ("Costa").  (*Id*. ¶ 16.)  Costa told Plaintiff to contact the Roundsman on duty, Rosario Gatto ("Gatto").  (*Id*. ¶ 17).

Plaintiff then reported the assault to Gatto and indicated that he wanted to call the police. (*Id.* ¶¶ 17, 18.) Gatto attempted to discourage him from calling the police. (*Id.* ¶ 19.) Gatto warned Plaintiff that doing so would escalate the situation. (*Id.*) Plaintiff however was not dissuaded from reporting the incident and reported the incident to the Port Authority Police Department. (*Id.* ¶¶ 22, 23.)

On or about the following day, Costa reassigned him to another post on the other side of the port. (*Id.* ¶ 24.) On that same day, Plaintiff was contacted by a detective from the Waterfront Commission, asking Plaintiff to be interviewed about the incident. (*Id.* ¶ 25.) Plaintiff's supervisors also discouraged him from getting the Waterfront Commission involved. (*Id.* ¶ 26.) Despite this discouragement, Plaintiff went to the Waterfront Commission and recounted the incident. (*Id.* ¶ 27.)

Following Plaintiff's report to the Waterfront Commission, Maersk Defendants again reassigned Plaintiff to a different position. (*Id.* ¶ 29.) Costa told Plaintiff that they were moving him because they did not want him to be near Carto. (*Id.* ¶ 30.)

On or about August 14, 2021, Plaintiff attempted to radio Brown, a co-worker who was assigned as Plaintiff's relief officer that night, so Plaintiff could take a break to use the restroom. (*Id.* ¶ 32.) When Brown did not respond, Plaintiff contacted his supervisor for assistance. (*Id.* ¶ 33.) After Plaintiff contacted his supervisor, Brown came to Plaintiff's booth, but refused to speak to Plaintiff and enter the booth. (*Id.* ¶ 35.)

On or about August 16, 2021, other guards told Plaintiff that Brown was making threatening statements about Plaintiff. (*Id.* ¶ 36.) The following day, Plaintiff was moved again and assigned to a new booth. (*Id.* ¶ 37.) While Plaintiff was in the booth, Brown drove up and parked about 100 feet away and sat in his parked car, watching Plaintiff. (*Id.* ¶ 38.) Plaintiff came

outside of the booth and approached Brown's car.  (*Id.* ¶ 39.)  Brown screamed and threatened Plaintiff, stating "fuck you! I will fuck you up!" (*Id.* ¶ 40.)  Plaintiff then went back inside the booth.  (*Id.* ¶ 41.)

Shortly thereafter, Plaintiff was called to the office to meet with his supervisor and another manager.  (*Id.* ¶ 43.)  Brown had reported that Plaintiff was harassing Brown and told him that Plaintiff had left his post.  (*Id.* ¶ 44.)  Plaintiff then explained that it was Brown who was threatening violence against Plaintiff.  (*Id.* ¶ 45.)

Plaintiff was thereafter terminated from his employment.  (*Id.* ¶ 49.)  Plaintiff's supervisor and manager informed him that the reason for his termination was because he had left his post.  (*Id.*)  Plaintiff then notified his union representative, who told Plaintiff that the Maersk Defendants considered him a troublemaker and had been looking for a reason to fire him.  (*Id.* ¶ 50.)  Plaintiff submitted a grievance challenging his termination the following day, and requested his termination be converted to a temporary unpaid suspension.  (*Id.* ¶ 51.)

Plaintiff provided a description of Brown's conduct and threatening statements beginning on August 14, 2021, when Brown was angry that Plaintiff asked him to relieve Plaintiff at his post so that Plaintiff could use the restroom.  (*Id.* ¶ 52.)  Plaintiff disclosed that he has medical conditions, specifically, prostate and kidney cancer, that require him to use the restroom urgently. (*Id.* ¶ 53.)  Maersk Defendants and Defendant PPGU were on notice of Plaintiff's disabilities and need for reasonable accommodation.  (*Id.* ¶ 54.)  Plaintiff's supervisor had been aware of both Plaintiff's disabilities for at least two years prior to this grievance.  (*Id.* ¶ 55.)  Plaintiff made this disclosure because his need to use the bathroom sometimes exceeded the two breaks per shift that Maersk Defendants permitted.  (*Id.* ¶ 56.)

Plaintiff's supervisor warned Plaintiff that the Maersk Defendants and Defendant PPGU consider any breaks, including bathroom breaks, in excess of the two provided per shift, to be a violation of union rules. (*Id*. ¶ 58.) Plaintiff was therefore forced to use plastic bottles rather than the bathroom when his conditions so required, to avoid incurring discipline by the Maersk Defendants. (*Id*. ¶ 59.)

Plaintiff again put the Maersk Defendants on notice of his condition and ongoing need for accommodation when he submitted his August 18, 2021 grievance. (*Id*. ¶ 60.) No one from Maersk Defendants engaged in interactive dialogue with Plaintiff regarding this request for accommodation. (*Id*. ¶ 61.)

On September 17, 2021, a hearing on Plaintiff's grievance was held before the New York Shipping Association ("NYSA") and PPGU Labor Relations Committee. (*Id*. ¶ 62.) At the hearing, Maersk Defendants stated that Plaintiff was not terminated for leaving his post, but rather it was the "straw that broke the camel's back" following Plaintiff's altercations with other employees. (*Id*.)

Following the hearing, Maersk Defendants converted Plaintiff's termination into an unpaid suspension and did not permit Plaintiff to return to work until October 4, 2021. (*Id*. ¶ 64.) Maersk Defendants, however, continued to fail to respond to Plaintiff's requests for accommodation. (*Id*. ¶ 65.)

Plaintiff contacted his supervisor to reiterate his need for an accommodation to permit him to use the bathroom. (*Id*. ¶ 68.) Plaintiff's supervisor explained that he would "ask a few questions" and add that to his "list of things to confirm" when Plaintiff returned to work. (*Id*. ¶ 69.)

On October 1, 2021, Plaintiff's union representative sent him an "Accommodation Request Form" to be submitted to a joint labor-management "NYSA-PPGU Accommodations Team" for review.  (*Id*. ¶ 70.)  When Plaintiff arrived for his shift on October 4, 2021, his supervisors told him that they were still assessing what the ADA requirements were.  (*Id*. ¶ 71.)

Plaintiff was instructed to accompany the Accommodation Request Form with a doctor's confirmation.  (*Id*. ¶ 72.)  Plaintiff was able to get an appointment with his doctor on October 19, 2021, and submitted the form to his supervisor and union representative.  (*Id*. ¶ 73.)  Maersk Defendants, however, failed to provide Plaintiff with an accommodation or engage in the interactive process.  (*Id*. ¶ 75.)

On October 25, 2021, the "Accommodations Team" notified Plaintiff that they, rather than Maersk Defendants, would hold an "interactive meeting" on November 1, 2021, to discuss Plaintiff's request for accommodation.  (*Id*. ¶ 76.)  The Accommodations Team informed Plaintiff that he was required to submit further and extensive medical information from his doctor about his condition and his ability to safely perform his job as a security office at the Port of New York and New Jersey without being a direct threat to himself or others in the workplace.  (*Id*. ¶ 77.)

Plaintiff submitted the Accommodation Team's questions to his doctor.  (*Id*. ¶ 81.)  On November 10, 2021, Plaintiff was informed that the Waterfront Commission had completed its investigation of the July 6, 2021 incident and decided to give warnings to all involved parties.  (*Id*. ¶ 82.)

On November 18, 2021, having received no decision from the Maersk Defendants regarding his request for reasonable accommodation, Plaintiff followed up with his supervisor to ask where the process stood.  (*Id*. ¶ 84.)  Plaintiff's supervisor indicated that that information came from the Waterfront Commission or NYSA, and that he was not involved with it.  (*Id*. ¶ 85.)

6

Plaintiff put the Maersk Defendants on notice that he intended to pursue legal action against them for violating his rights under LAD.  (*Id*. ¶ 87.)

On or about December 17, 2021, Plaintiff was working in a booth at his assigned post when Carto opened the door, stood in the open doorway, screamed and cursed at Plaintiff for about 30 seconds, started laughing, and walked back to the parking lot.  (*Id*. ¶ 89.)  Plaintiff immediately reported this incident to his supervisor and requested to meet with Costa to discuss the work environment created by Carto's continuingly posed threat.  (*Id*. ¶ 90.)  Costa agreed to meet with Plaintiff a couple hours later.  (*Id*. ¶ 91.)  Costa, however, took no action to address or investigate the incident.  (*Id*.)  Plaintiff then asked Costa if he had reviewed the video footage to confirm what Plaintiff had reported, and Costa responded that he had not and that he was not going to get involved because there was litigation going on.  (*Id*. ¶ 92.)  Plaintiff thereafter reiterated that he felt unsafe at work given the prior assault.  (*Id*. ¶ 93.)  Costa's only response was to shrug and tell Plaintiff to "take it up with management," despite Costa himself being a part of the management team.  (*Id*. ¶ 94.)

## II.     LEGAL STANDARD

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447.  Grounds for remand include: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993).  A motion for remand on the basis of a procedural defect in the removal must be filed within thirty (30) days of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment," *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1212-13 (3d Cir. 1991) (citing 28 U.S.C. § 1447(c)).

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id*. at 396-403. Additionally, when a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

### III.  DISCUSSION

In their notice of removal, Defendants argue that the Complaint arises under a law of the United States, specifically, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA"), and therefore this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337. (NOR ¶ 8.)

Although federal courts have limited jurisdiction, 28 U.S.C. § 1331 vests federal district courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "[T]he presence of federal question jurisdiction is governed by reference to the "well-pleaded complaint" doctrine." *Dawson ex rel. Thompson v. Ciba-Geigy Corp., USA*, 145 F. Supp. 2d 565, 568 (D.N.J. 2001) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). Under this rule, a plaintiff is the "master of the complaint," and a case filed in state court may be removed only if a federal claim exists on the face of a plaintiff's complaint. *Id.* (citing *Merrell Dow Pharmaceuticals, Inc.*, 478 U.S. at 808); *Hall v. Keyes*, Civ. No. 21-4748, 2021 WL 2660296, at *2 (D.N.J. June 29, 2021) (citations omitted).

Under the well-pleaded complaint rule, defenses grounded in federal law generally do not establish federal question jurisdiction, even if federal law preempts a state-law claim. *Caterpillar*

*Inc. v. Williams*, 482 U.S. 386, 392–93 (1987). However, "a corollary" rule known as the "complete preemption doctrine" applies where "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id*. at 393 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id*. (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24, 103 (1983)).

"Section 301(a) of the LMRA, 29 U.S.C. § 185(a), is one such statute that imposes the doctrine of complete preemption." *Manos v. United Good and Commercial Workers Intern. Union*, 9 F. Supp. 3d 473, 479 (citing *Caterpillar*, 482 U.S. at 393). Section 301 provides that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 404 (1988).

Despite its "extraordinary preemptive force," the LMRA does not necessarily preempt all state law claims brought by union employees against their employers. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S.

9

at 394 (citations and quotation marks omitted). In other words, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law[.]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). But the "existence of a [collective bargaining agreement] does not, in itself, prevent an individual from asserting state-law claims based on an agreement or obligations independent of the CBA." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 438 (D.N.J. 2011). Thus, "[c]laims that are independent of a collective bargaining agreement, even if they are between employees and employers" are not preempted by the LMRA and "are not removable." *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996), amended, (3d Cir. Jan. 20, 1997).

Defendants claim that from January 1 through December 31, 2022, Plaintiff's employment was governed by a collective bargaining agreement ("CBA", ECF No. 1-3) between PPGU and the Maersk Defendants. (NOR. ¶ 13.) Defendants assert that the CBA expressly recognizes that it is a violation of the policy to "discriminate against disabled Security Officers in hiring, assignment and promotion, and to provide reasonable accommodations for Security Officers who have covered disabilities." (*Id*. ¶ 14.)

Plaintiff argues that the LMRA's preemption does not apply to his state law claims because the bases for relief are independent of the CBA. (Moving Br. at 2.) Plaintiff asserts that he has alleged specific conduct to establish violations of the NJLAD for failure to accommodate disability, failure to engage in the interactive process, and aiding and abetting such failures without any reference to any provisions of the CBA. (*Id*. at 5.)

Maersk Defendants argue in opposition that that the CBA at issue here includes a comprehensive policy entitled "ADA Compliance and Reasonable Accommodation." (Maersk

Opp'n Br. at 6.) Maersk Defendants claim that the Complaint alleges that APMT failed to engage in the interactive process despite the fact that the CBA delegates that responsibility. (*Id*. at 7.) Maersk Defendants claim that Plaintiff alleges that Defendants have violated the NJLAD because they failed to follow the procedures set forth in the ADA Compliance policy set forth in the CBA and that such procedures themselves violate the NJLAD. (*Id*.)

Further, PPGU also argues that Plaintiff's NJLAD claims are entirely dependent upon the underlying CBA. (PPGU Opp'n Br. at 15.) PPGU argues that a "close reading of the Complaint reveals that Plaintiff cannot persuasively argue that his NJLAD claims against PPGU are not intertwined, impacted by or subject to PPGU's adherence to the CBA and its accommodation procedures therein. (*Id*.) PPGU claims that Plaintiff ignores that the CBA provides specific procedures for requesting reasonable accommodation for disabilities. (*Id*. at 16.)

If Plaintiff's "breach of contract claim alleges a violation of a provision in the CBA" or is substantially dependent on an analysis of the CBA, the claim must be brought under § 301." *Snyder v. Dietz & Watson, Inc*., 837 F. Supp. 2d 428, 441 (D.N.J. 2011). The Third Circuit has previously addressed the intersection of federal and state law in employment contract disputes. *See N.J. Carpenters v. Tishman Constr. Corp*., 760 F.3d 297, 306 (3d Cir. 2014) (finding § 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law"); *Kline v. Sec. Guards, Inc*., 386 F.3d 246, 256 (3d Cir. 2004) (noting that the "dispositive question [in pre-emption analysis] is whether Appellants' state claims require an interpretation of a provision of the CBA"); *Voilas v. GMC*, 170 F.3d 367, 378 (3d Cir. 1999) (finding no pre-emption because plaintiff's "claim in this case is not directly based upon the [CBA] . . . nor will the resolution of the elements . . . require the interpretation of those bargaining agreements"); *Cf. Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996) (finding pre-emption of

plaintiff's Pennsylvania Wage Payment and Collection Law claims because the "suit [was] based 'squarely on the terms of the collective bargaining agreement'") (citing *Wheeler v. Graco Trucking Corp.*, 985 F.2d 108, 113 (3d Cir. 1993)).

Similarly, this Court has consistently "determined that claims under the NJLAD are separate and independent from the terms of labor contracts." *Naples v. N.J. Sports & Exposition Auth.*, 102 F. Supp. 2d 550, 553 (D.N.J. 2000) (internal citations omitted).

Ultimately, the Third Circuit has clearly stated that the "dispositive question [in preemption analysis] is whether [plaintiffs'] state claims require an interpretation of a provision of the CBA." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 256 (3d Cir. 2004). Maersk Defendants claim that the LMRA completely preempts Count Three and Four of Plaintiff's Complaint. (Maersk Opp'n Br. at 1.) PPGU Defendants claim the LMRA completely preempts Counts Three through Five. (PPGU Opp'n Br. at 10.) The Court will therefore address each of these counts in turn.

### A. Failure to Accommodate Disability

Here, Plaintiff seeks enforcement of his right not to be discriminated against under the state anti-discrimination law, "which defines the right without reference to any collective bargaining agreement." *Patterson*, 262 F. Supp. 2d 453, 466; N.J.S.A. 10:5-1. Count Three of the Complaint asserts failure to accommodate disability in violation of the NJLAD.

In order to prevail on a "failure to accommodate" claim under the NJLAD, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006). This Court finds that each of those elements can be resolved without an "interpretation" of the collective-bargaining agreement at issue. Defendants, who bear the burden of establishing that this Court may exercise subject matter jurisdiction over Plaintiff's claims, *Manning v. Merrill*

12

*Lynch Pierce Fenner & Smith, Inc*., 772 F.3d 158, 162 (3d Cir.2014), contend that Plaintiff's NJLAD claims are substantially dependent on the analysis of the Policy set forth in the CBA. (Maersk Opp'n Br. at 10; PPGU Opp'n Br. at 15.)  Defendants' arguments, however, are based on a mischaracterization of the allegations set forth in Plaintiff's Amended Complaint.

Maersk Defendants represent that Defendants were "required by the CBA to use the process laid out in the CBA when responding to Plaintiff's request for accommodation." (Maersk Opp'n Br. at 10.)  Maersk Defendants then conclude, without further explanation, that the Court cannot "evaluate the propriety of [Defendants'] actions without evaluating the requirements of the CBA and its terms[.]" (*Id*.).  Further, PPGU represents that the "CBA provides specific procedures for requesting reasonable accommodation[s][.]"  (PPGU Opp'n Br. at 16.)  PPDU contends that the "only logical interpretation is that the Complaint directly incorporates the question of the proper interpretation of the CBA's accommodation provisions into Plaintiff's NJLAD discrimination claim."  (Id. at 16–17.)  These arguments, however, mischaracterize Plaintiff's claim.  Plaintiff does not challenge the validity or legal impact of the CBA at all.  (*See generally* Compl.)  Rather, Plaintiff contends that Defendants' actions in failing to provide Plaintiff with a reasonable accommodation constituted an actionable "failure to accommodate" under the NJLAD. (*Id*. ¶¶ 84, 105.)  Plaintiff bases his cause of action solely on Defendants' alleged conduct, not the content or effect of the CBA, as is his right to choose not to do so as "master of the complaint." *See, e.g., Caterpillar Inc.,* 482 U.S. at 394.

Defendants, who bear the burden of establishing that the Court's exercise of subject matter jurisdiction would be appropriate, *Manning*, 772 F.3d at 162, have not articulated any other reason as to why the Court might have to "interpret" the parties' collective-bargaining agreement in the context of adjudicating Plaintiff's "failure to accommodate" claim.  A court can resolve each

element of Plaintiff's claim without analyzing or interpreting the parties collective bargaining agreement.  Indeed, it appears that a court will only need to interpret the terms the CBA itself if Defendants inject the content and legal effect of that agreement into the case as part of a defense. *See Sharkey v. Verizon of N.J.*, Civ. No. 14-2788, 2015 WL 1471974, at *8 (D.N.J. Mar. 18, 2015). Defenses, however, cannot typically serve as the basis for removal.  *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).

In sum, the Court finds that Plaintiff's "failure to accommodate" claim, as pled, neither seeks relief in connection with the parties' collective-bargaining agreement nor requires any interpretation of that agreement.  Rather, Plaintiff's claim is based upon an independent right created under New Jersey state law.  Accordingly, that claim is not subject to preemption under Section 301 of the LMRA.

### B. Failure to Engage in the Interactive Process and Aiding/Abetting Failure to Accommodate/Engage in the Interactive Process

Count Four asserts a failure to engage in the interactive process in violation of the NJLAD. Count Five asserts a parallel claim that "PPGU is liable to Plaintiff for aiding and abetting the Maersk Defendants in their failure to accommodate Plaintiff's disability and failure to engage in the interactive process under the LAD."  (Compl. ¶ 110).

When an employee requests an accommodation for a disability, the employer has a responsibility "to 'engage the employee in the interactive process of finding accommodations.'" *Armstrong*, 438 F.3d at 246 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999)).

New Jersey courts have developed an independent test to determine whether an employer failed to engage in the interactive process:

> To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer

14

> knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Tynan v. Vicinage 13*, 351 N.J. Super. 385, 400–01 (App. Div. 2002). The interactive process itself under the NJLAD has been borrowed from the federal regulations under the Americans with Disabilities Act (the "ADA"), and consists of an informal interaction between the employer and the employee identifying potential reasonable accommodations geared to the individual employee's situation. *Tynan*, 798 A.2d at 657; *Victor v. State*, 401 N.J. Super. 596, 613 (App. Div. 2008). The burden is first upon the employee to request assistance, and then upon the employer to come up with potential accommodations. *Tynan*, 798 A.2d at 657.

Plaintiff contends that Defendants are liable for failing to engage in the interactive process following Plaintiff's request for a reasonable accommodation. (Compl. ¶¶ 84, 105.) Here again, Plaintiff bases his cause of action solely on Defendants' alleged conduct, not the content or effect of the CBA. PPGU Defendants claim that the CBA provides specific procedures for requesting reasonable accommodation. (PPGU Opp'n Br. at 16.) Such an argument, however, would require the Court to interpret the CBA itself due to Defendants raising it as a defense. As noted above, however, defenses cannot typically serve as the basis for removal.

Accordingly, the Court finds that Plaintiff's "failure to engage in the interactive process" claims, as pled, neither seeks relief in connection with the parties' collective-bargaining agreement nor requires any interpretation of that agreement. Plaintiff's claims in Count Four and Count Five are therefore not preempted by the LMRA.

In sum, Plaintiff has "not alleged a violation of any term or condition of the CBA." *Kline*, 386 F.3d at 256. While Plaintiff could have availed himself of the rights and protections which the

CBA affords to him, he chose not to. As such, his state law discrimination claims can, on its face, "be resolved without interpreting the [CBA] itself." *Lingle*, 486 U.S. at 409–10.

### C. Attorney's Fees

Finally, Plaintiff argues that Defendants should be ordered to pay his attorney's fees, costs and expenses incurred in bringing this motion for remand. (Moving Br. at 10.) Section 1447 of Title 28 governs the procedure after removal and provides for the award of attorney's fees:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c). Such an award of fees, incurred as a result of removal, lies in the discretion of the court, and does not require a showing of bad faith, nor that the removal was fruitless. *See Eyal Lior v. Sit*, 913 F. Supp. 868, 878 (D.N.J.1996). "In general, a court may award fees under 38 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *South Annville Township v. Kovarik*, 651 F. App'x 127, 130 (3d Cir. 2016) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (interior quotation marks omitted)). Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141. Plaintiff, therefore, is not automatically entitled to fees and costs simply because he has prevailed on a motion to remand.

The Court declines to award fees or costs in this case. "The issue implicated in removal—the application of the doctrine of complete pre-emption as it relates to federal question subject matter jurisdiction—is not simple." *Tarby v. B.J. McGlone & Co., Inc.* v. Civ. No. 16-1367, 2016 WL 7217596, at *4 (D.N.J. Dec. 13, 2016). Moreover, while the question of LMRA preemption has been addressed within this District, "no controlling authority directly on-point exists." *Id*.

16

Thus, the Court does not conclude that Defendant lacked an objectively reasonable basis for removal. Plaintiff's request for costs and fees will therefore be denied.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion to Remand to the Superior Court of Jersey, Mercer County, will be GRANTED. An appropriate Order will follow.

Date: **May 12, 2023**

                                                  s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**